IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| **Kenisha Jackson,**<br><br>                              Plaintiff<br><br>vs.<br><br>**City of Aiken Housing Authority,**<br><br>**Reginal Barner**, in his official capacity as Chief Executive Officer of the City of Aiken Housing Authority, and<br><br>**Debra Young**, in her official capacity as Director of the Housing Choice Voucher Program for the City of Aiken Housing Authority,<br><br>                              Defendants | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

## INTRODUCTION

Plaintiff is a low-income working mother of four and a participant in the Section 8 Housing Choice Voucher ("HCV") program operated by Defendants. The HCV program is a federally-funded affordable housing program which provides low-income participants with a rental subsidy which enables them to afford decent and safe housing. Participants may use their HCV program assistance to subsidize the rent they are required to pay in the private market so that the participant-family's rent burden is, generally, not more than 30% of their income.

On July 1, 2016, Plaintiff's lease with her previous landlord, Mr. Allred, ended. Plaintiff had received a job offer in Fort Mill and, for that reason along with some difficulty she had getting Mr. Allred to make repairs, Plaintiff had decided to move. She had given proper notice to Mr. Allred and Defendant CAHA of her intention to end their lease and requested that Defendant CAHA process her request to move her HCV assistance to the Fort Mill Housing Authority so that she could find a place to live in that area. Plaintiff had been a participant in the HCV program for over five years and had moved twice before with her HCV assistance without incident.

After Plaintiff notified Mr. Allred of her intent to terminate their lease and after she had moved out of the property she was renting, Mr. Allred notified her that she owed him $572.00 for damage to an air conditioning unit and rent for the month of July 2016 among other things. Plaintiff denied that she was responsible for the majority of these charges, though she did pay $180.00 to Mr. Allred for certain items in an effort to resolve the matter. Defendant CAHA advised Plaintiff that Mr. Allred would need to sign a form indicating that she was in compliance with her lease agreement before they would process her request to move her voucher to Fort Mill. Mr. Allred refused to sign this form unless Plaintiff paid what he demanded which, by the end of July, had increased to $1,050.00.

Because Mr. Allred has refused to sign CAHA's form, Defendants have refused to process Plaintiff's request to move. As a result, Plaintiff is unable to use her HCV program assistance to rent a home near her job. She and her four children have had to move in with her sister, who has four children of her own, and her niece. She has had to place her belongings in storage. Plaintiff is effectively homeless and will remain so unless Defendants process her request to move and allow her to user her HCV program assistance in Fort Mill. Defendants have also, as of the date undersigned, filed to hold a grievance hearing, despite Plaintiff's request, which would give her the opportunity to confront any witnesses and refute any evidence against her.

Plaintiff initiated this action by verified complaint (ECF No. 1) on August 15, 2016. Plaintiff seeks a preliminary injunction requiring Defendants to immediately process her request to move with her HCV program rental subsidy.

## ARGUMENT

In order to demonstrate her entitlement to a preliminary injunction, Plaintiff must show that (i) that she is likely to succeed on the merits; (ii) that she is likely to suffer irreparable harm in the absence of preliminary relief; (iii) that the balance of the equities tip in her favor; and (iv) that an injunction is in the public interest. Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 129 S.Ct. 365 (2008). The purpose of a preliminary injunction "is to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits." In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 525 (4th Cir. 2003). A preliminary injunction is an "extraordinary remedy,"

MicroStrategy Inc. v. Motorola, Inc., 245 F.3d 335, 339 (4th Cir. 2001).  However, "[t]he District Court has no discretion to deny relief by preliminary injunction to a person who clearly establishes by undisputed evidence that he is being denied a constitutional right." Henry v. Greenville Airport Com., 284 F.2d 631, 633 (4th Cir. S.C. 1960).  Because Plaintiff satisfies the requirements of Winter and because she has plainly been denied a constitutional right, the preliminary relief requested should be granted.

   I.     *Plaintiff is Likely to Succeed on the Merits of her Claim*

A party seeking preliminary injunctive relief must make a "clear showing" that they are likely to succeed on the merits.  Winter, 555 U.S. at 22.  This does not mean that Plaintiff is required to show a "certainty of success" at trial.  Pashby v. Delia, 709 F.3d 307, 321 (4th Cir. 2013).  Plaintiff brings this action pursuant to 42 U.S.C. § 1983 which imposes liability on anyone who, under color of state law, deprives a person of any rights, privileges, or immunities secured by the Constitution and laws.  Actions under § 1983 have long been used to enforce rights created by the Constitution and federal statutes against state actors.  Maine v. Thiboutot, 448 U.S. 1 (1980).  Because she can demonstrate that Defendants have effectively terminated, and at the very least indefinitely suspended, her participation in the HCV program in violation of U.S. Const. Amend. XIV, §1, Plaintiff can demonstrate a high likelihood of success on the merits in this action.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const., Amend. XIV, § 1.  Due process requires that recipients of public housing assistance, like Plaintiff, receive notice and an opportunity to be heard prior to adverse action affecting such benefits.  Goldberg v. Kelly, 397 U.S. 254, 268 (1970).  In order to provide due process under the Fourteenth Amendment, the U.S. Supreme Court requires compliance with five requirements before terminating housing assistance benefits: (1) timely notice stating the basis for the proposed termination; (2) an opportunity by the tenant to confront and cross-examine each witness relied upon for the termination; (3) the right of the tenant to be represented by counsel; (4) a decision, based solely on evidence adduced at the hearing, in which the reasons for the decision are set forth; and (5) an impartial decision maker.  Id. at 266-71; *See also*, Clark v. Alexander, 85 F.3d 146 (4th Cir. 1996);

Caulder v. Durham Hous. Auth., 433 F.2d 998 (4th Cir. 1970); Joy v. Daniels, 479 F.2d 1236 (4th Cir. 1974).

In the instant case, Defendants have not notified Plaintiff that they are terminating her HCV program assistance. However, the result of Defendants' conduct is the same as if Plaintiff's participation had been terminated: she is unable to use her HCV program assistance to rent decent and safe housing. Presumably for this reason, regulations promulgated by the United States Department of Housing and Urban Development ("HUD") which govern the HCV program define a "termination of assistance" to include a PHA "refusing to process or provide assistance under portability procedures". 24 C.F.R. § 982.555(a)(3). "Portability" is defined as "renting a dwelling unit with Section 8 tenant-based assistance outside the jurisdiction of the initial PHA". 24 C.F.R. § 982.4(b). In the instant case, Plaintiff's request to move falls under portability procedures because it is a request to rent a dwelling unit with HCV program assistance outside the jurisdiction of CAHA, the "initial PHA". Thus, whether viewed from a practical or a technical perspective, Defendants' conduct is tantamount to a termination of Plaintiff's HCV program assistance.

As discussed above, Plaintiff is entitled to certain procedural protections before her HCV program assistance may be terminated. These protections arise out of her Constitutional right to due process and are echoed in the HUD regulations governing the HCV program. If a PHA, like Defendant CAHA, proposes to terminate a family's participation in the HCV program, the PHA must give prompt written notice to the family stating the reasons for the decision, stating that the family may request an informal hearing if they do not agree with the decision, and setting a deadline for the family to request an informal hearing. 24 C.F.R. §§ 982.555(a)(1)(v) and 982.555(c)(2). An informal hearing is designed to provide the family with the due process protections required by the Fourteenth Amendment. When a family requests an informal hearing, the PHA is required to proceed with the hearing in a "reasonably expeditious manner". 24 C.F.R. § 982.555(d). If the PHA has proposed to terminate the family's HCV program assistance, the PHA must give the family an opportunity for an informal hearing before it terminates assistance payments under an outstanding HAP contract. The person who conducts the hearing, and ultimately makes a decision as to the issues presented, the "hearing officer", must be independent and must issue a written decision based solely on a preponderance of the evidence presented at the hearing. 24 C.F.R. § 982.555(e)(5) and (6). The hearing officer's decision is subject to judicial

review and may be overturned if it was not based upon substantial evidence, among other reasons. *See e.g.* Clark v. Alexander, 85 F.3d 146 (4th Cir. 1996).

Here, Defendants have failed to notify Plaintiff that her HCV program assistance is being terminated, have failed to notify her of the grounds for such termination, and failed to hold a grievance hearing, as of the date undersigned, despite Plaintiff's requests. Yet, Defendants have also refused to process her request to move, a refusal which is tantamount to termination of Plaintiff's HCV program assistance. As of the date undersigned, Plaintiff has remained in this "limbo" for approximately one and a half months. She is unable to use her HCV program assistance and has not been afforded an opportunity to challenge the basis that Defendants appear to be using to withhold that assistance. Defendants have clearly violated the rights assured to Plaintiff by the Fourteenth Amendment. Because Defendants are or act on behalf of a federally-funded state entity, Defendants' conduct is under color of state law. As a result, Plaintiff is highly likely to succeed on the merits of her § 1983 claim.

## II.     *Plaintiff is Likely to Suffer Irreparable Harm Absent Injunctive Relief*

In addition to a likelihood of success on the merits, a party seeking injunctive relief must also show that they are likely to suffer irreparable harm absent preliminary relief. Winter, 550 U.S. at 22. "Irreparable harm consists of harm that could not be sufficiently compensated by money damages or avoided by a later decision on the merits." MicroAire Surgical Instruments, LLC v. Arthrex, Inc., 726 F. Supp. 2d 604, 634 (W.D. Va. 2010); Canon, Inc. v. GCC Int'l, Ltd., 263 F. App'x 57, 62 (Fed. Cir. 2008) (citing DAN B. DOBBS, LAW OF REMEDIES, 193-94 (2d ed. 1993)). Irreparable harm is generally suffered "when monetary damages are difficult to ascertain or are inadequate." Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co., 22 F.3d 546, 551 (4th Cir. 1994).

One harm that Plaintiff seeks to alleviate through preliminary relief is, effectively, homelessness. Defendants' refusal to process her request to move with her HCV assistance has resulted in Plaintiff losing access to decent and safe housing and having to move into incredibly crowded conditions with family on a temporary basis. Numerous courts have held that the mere prospect of homelessness constitutes a threat of irreparable harm sufficient to justify injunctive relief. *See e.g.* Williams v. Hous. Auth. of Raleigh, 2005 U.S. Dist. LEXIS 46791, 9-10 (E.D.N.C.

Apr. 14, 2005) (The prospect of eviction, which may lead to homelessness, is certainly a severe and irreparable harm."); Smith v. State Farm Fire & Cas. Co., 737 F. Supp. 2d 702, 714 (E.D. Mich. 2010) (*citing* Baumgarten v. County of Suffolk, No. 07-539, 2007 U.S. Dist. LEXIS 39229, 2007 WL 1490487 at * 5 (E.D.N.Y. Feb. 20, 2007)); Tellock v. Davis, No. 02-CV-4311, 2002 U.S. Dist. LEXIS 20917, 2002 WL 31433589, at *7 fn. 2 (E.D.N.Y. Oct. 31, 2002); McNeill v. New York City Housing Authority, 719 F. Supp. 233, 254 (S.D.N.Y.1989)); Calvagno v. Bisbal, 430 F. Supp. 2d 95, 100 (E.D.N.Y.2006) (holding that plaintiffs will suffer irreparable harm by losing their only residence); In re Slater, 200 B.R. 491, 495 (E.D.N.Y.1996)); Park Village Apts. Tenants Assoc. v. Mortimer Howard Trust, No. 09- 4780, 2010 U.S. Dist. LEXIS 14874, 2010 WL 431458 at * 3 (N.D. Cal. Feb. 1, 2010), *rev'd on other grounds,* (threat of homelessness and irreparable harm shown where rent increases and defendant's refusal to accept enhanced vouchers threatened eviction with no prospect of alternative low income housing).

Further, "the denial of a constitutional right, if denial is established, constitutes irreparable harm for purposes of equitable jurisdiction." Ross v. Meese, 818 F.2d 1132 (4th Cir. 1987). Here, as indicated above, Plaintiff can make a clear showing that Defendants' conduct violates her right to due process, a right established by the Fourteenth Amendment. Thus, Plaintiff can demonstrate irreparable harm absent injunctive relief based both on the fact that she has been made homeless by Defendants' conduct, and will remain so absent the relief she seeks, and based on Defendants' violation of her constitutional rights.

### III.     *The Balance of Equities Tips in Plaintiff's Favor*

Plaintiff can show that "a preliminary injunction is justified considering the balance of hardships between the litigants." American Whitewater v. Tidwell, 2010 WL 5019879 at *13 (D.S.C. 2010). To determine if a plaintiff has met this prong, "[c]ourts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Winter, 555 U.S. at 24, 129 S. Ct. at 376 (quoting Amoco Production Co., 480 U.S. 531, 542, 107 S. Ct. 1396, 1402 (1987)). Weighed against the immediate and irreparable harm to Plaintiff in the absence of injunctive relief is the fact that Defendants will suffer no cognizable harm if the relief Plaintiff requests is granted. Defendants will not be harmed by being required to allocate HCV program assistance to Plaintiff. Defendants will not be harmed

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION                                                                                    Page **6** of **8**

by being required to process Plaintiff's request to move. These tasks simply involve the allocation of funds to a purpose for which they are already devoted and the processing of paperwork which is a part of Defendants' ordinary course of business. The balance of equities clearly favors granting Plaintiff the relief she seeks.

## IV.    *Injunctive Relief is in the Public Interest*

Plaintiff can show that preliminary relief is in the public interest. Winter, 555 U.S. at 20, 129 S. Ct. at 374. The public interest would be served by the issuance of a preliminary injunction in this action because it would protect Plaintiff and her four children from the hardships of homelessness. Moreover, "upholding constitutional rights is in the public interest." Legend Night Club v. Miller, 637 F.3d 291, 303 (4th Cir. 2011); *see also* Newsom v. Albemarle County Sch. Bd., 354 F.3d 249, 261 (4th Cir. Va. 2003) ("[s]urely, upholding constitutional rights serves the public interest"). Because the public interest favors preventing homelessness and vindicating constitutional rights, granting Plaintiff the relief she seeks is in the public interest.

## CONCLUSION

Defendants have effectively terminated Plaintiff's HCV program assistance, a well-recognized property interest, without affording her even the shadow of due process. The result for Plaintiff and her four children has been homelessness. Plaintiff seeks, by her request for preliminary relief, to alleviate this harm for herself and her family. Because she can demonstrate a likelihood of success on the merits, irreparable harm in the absence of injunctive relief, that the balance of equities tips in her favor, and that granting the relief she requests is in the public interest; Plaintiff's motion for preliminary injunction should be granted.

Respectfully Submitted,

SOUTH CAROLINA LEGAL SERVICES

s/ Adam Protheroe
August 16, 2016                         By:  Adam Protheroe
Orangeburg, SC                          Fed Id No. 11033
                                        P.O. Box 1646
                                        Orangeburg, SC 29116
                                        [o] (803) 533-0116 ext. 4616

[f] (803) 534-5556
adamprotheroe@sclegal.org
Attorney for the Plaintiff

CERTIFICATE OF SERVICE

I certify that on **August 16, 2016** a copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** was filed electronically and notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to the parties listed below who are unable to accept electronic filing.

**City of Aiken Housing Authority**
**100 Rogers Terrace**
**Aiken, SC 29802**

**Reginal Barner, Chief Executive Officer**
**100 Rogers Terrace**
**Aiken, SC 29802**

**Debra Young, Director Housing Choice Voucher Program**
**100 Rogers Terrace**
**Aiken, SC 29802**

s/ Adam Protheroe_____