UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Kenisha Jackson,<br><br>    Plaintiff,<br><br>  v.<br><br>City of Aiken Housing Authority, Reginal Barner, in his official capacity as Chief Executive Officer of the City of Aiken Housing Authority, and Debra Young, in her official capacity as Director of the Housing Choice Voucher Program for the City of Aiken Housing Authority,<br><br>    Defendants. | CIVIL ACTION NO. 1:16-cv-02831-JMC<br><br><br><br>**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER AND OPINION GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION[1]** |

  Plaintiff Kenisha Jackson ("Plaintiff") filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants City of Aiken Housing Authority ("CAHA"), Reginal Barner ("Barner"), in his official capacity as Chief Executive Officer of the City of Aiken Housing Authority, and Debra Young ("Young"), in her official capacity as Director of the Housing Choice Voucher Program for the City of Aiken Housing Authority, (collectively "Defendants") alleging violation of her rights protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. (ECF No. 1.)

  This matter is before the court on Plaintiff's Motion for Preliminary Injunction, which is generally opposed by Defendants. (ECF Nos. 9 & 45.) For the reasons set forth below, the court

---

[1] Rule 52 of Federal Rules of Civil Procedure requires the court to "state the findings and conclusions that support" the "granting or refusing [of] an interlocutory injunction." Fed. R. Civ. P. 52(a)(2). To the extent any findings of fact constitute conclusions of law, they are adopted as such; to the extent any conclusions of law constitute findings of fact, they are so adopted.

**GRANTS** Plaintiff's Motion for Preliminary Injunction.

## I.    FINDINGS OF FACT RELEVANT TO PENDING MOTION

1. "Plaintiff is a citizen and resident of York County, South Carolina." (ECF No. 1 at 2 ¶ 5.)

2. Plaintiff is a single mother of four children. (ECF No. 9-1 at 1.)

3. "CAHA is a federally-funded state entity which is authorized to administer the Section 8 voucher program pursuant to 28 U.S.C. § 1437f." (ECF No. 1 at 2 ¶ 5.)

4. "CAHA is a public housing agency ("PHA") as defined in 42 U.S.C. § 1437a(b)(6) and 24 C.F.R. § 982.4(b)." (Id.)

5. Plaintiff "is a participant in the . . . [Section 8 Housing Choice Voucher ("HCV")] program managed by CAHA . . . ." (ECF No. 1 at 2 ¶ 5.)

6. "The housing choice voucher program is the federal government's major program for assisting very low-income families, the elderly, and the disabled to afford decent, safe, and sanitary housing in the private market." U.S. Department of Housing and Urban Development, https://portal.hud.gov/hudportal/HUD?src=/topics/housing_choice_voucher_program_section_8 (last visited Dec. 13, 2016). "The PHAs receive federal funds from the U.S. Department of Housing and Urban Development (HUD) to administer the voucher program." Id.

7. "A family that is issued a housing voucher is responsible for finding a suitable housing unit of the family's choice where the owner agrees to rent under the program." Id. "A housing subsidy is paid to the landlord directly by the PHA on behalf of the participating family." Id. "The family then pays the difference between the actual rent charged by the landlord and the amount subsidized by the program." Id.

8. "Plaintiff began participating in the Section 8 HCV program operated by

2

Defendant CAHA in approximately 2010." (ECF No. 1 at 6 ¶ 22.)

9.     On August 1, 2012, Plaintiff entered into a residential lease agreement with Frances W. Allred ("Allred") for use of property located at 5018 Trotter Court in Jackson, South Carolina. (ECF No. 1-2.) When the residential lease expired on July 31, 2013, Plaintiff continued to live at the Trotter Court property as a month to month tenant until July 1, 2016. (ECF No. 1 at 6 ¶ 24.)

10.    "In May 2016, Plaintiff received an offer of employment in Fort Mill, South Carolina and she decided to move in order to take advantage of this offer and for other reasons." (Id. at ¶ 25.) Plaintiff contacted CAHA and was informed that she "would need to have her landlord, Mr. Allred, sign a form, referred to as a 'blue form' indicating that the tenancy was terminated and that CAHA would need to have that form at least 30 days before Plaintiff moved from 5018 Trotter Court." (Id. at ¶ 26.)

11.    Between May 24 and June 7, 2016, Plaintiff attempted unsuccessfully to procure a signed blue form from Allred. (Id. at 6 ¶ 27–7 ¶ 30.) Plaintiff learned that "Allred believed that Plaintiff owed him money for a variety of things and that he would not sign the blue form unless she paid." (Id. at ¶ 30.)

12.    On July 1, 2016, Plaintiff moved out of the Trotter Court residence. (Id. at 7 ¶ 32.)

13.    In July of 2016, Plaintiff and Allred continued to disagree on the amount of damages Plaintiff would have to pay in order for Allred to sign the blue form. (Id. at 8 ¶¶ 34–37.) "Throughout . . .Plaintiff's dispute with . . . [Allred], CAHA . . . maintained its willingness to issue the requested Voucher upon . . . Plaintiff resolving her dispute with . . . [Allred] over the damages and rental amounts claimed to be due, with . . . [Allred] then signing the Mutual

3

Agreement to Vacate Form." (ECF No. 45-1 at 4 ¶ 9.)

14.     Without her HCV, Plaintiff and her four children were forced to move into Plaintiff's sister's home in Fort Mill. (ECF No. 1 at 8 ¶ 38.)

15.     On July 28, 2016, Young received a letter of representation from Plaintiff's counsel "advising that he was representing the Plaintiff, setting forth her position on the dispute with her Landlord, and requesting a grievance hearing to be scheduled within 14 days." (ECF No. 45-1 at 3 ¶ 6 (referencing ECF No. 45-1 at 17–18).)

16.     On August 15, 2016, Plaintiff filed the instant action against Defendants alleging a cause of action pursuant to 42 U.S.C. § 1983 for violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. (ECF No. 1 at 9 ¶ 45–10 ¶ 49.) Later on that day, Young contacted Plaintiff's counsel "to schedule the grievance hearing" and was told "that suit had already been filed in U.S. District Court." (ECF No. 45-1 at 3 ¶ 8.) "No grievance hearing was ever scheduled." (Id.)

17.     On August 16, 2016, Plaintiff filed the instant Motion for Preliminary Injunction (ECF No. 9) seeking an order "requiring Defendants to immediately process Plaintiff's request to move and permit her to utilize her HCV program rental assistance at an appropriate home of her choosing . . . ." (Id. at 1.)

18.     The court heard argument from the parties on this matter on November 28, 2016. (ECF No. 43.)

## II.     LEGAL STANDARD AND ANALYSIS

A.     Preliminary Injunctions Generally

19.     The court's authority to issue preliminary injunction arises from Rule 65,[2] but "it

---

[2] The court observes that "rule" refers to the Federal Rules of Civil Procedure.

is an extraordinary remedy never awarded as of right." Winter v. Nat'l Res. Def. Council, Inc., 555 U.S. 7, 24 (2008).

20. A party seeking a preliminary injunction must establish all four of the following elements: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. Id.; The Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346–47 (4th Cir. 2009).

21. The Fourth Circuit no longer recognizes a "flexible interplay among the four criteria for a preliminary injunction." Real Truth, 575 F.3d at 347. Each of these requirements "must be fulfilled as articulated." De la Fuente v. S.C. Dem. Party, CA No. 3:16-cv-00322-CMC, 2016 WL 741317, at *2 (D.S.C. Feb. 25, 2016). A plaintiff must first prove the first two elements before a court considers whether the balance of the equities tips in his favor. See Real Truth, 575 F.3d at 346–47. Additionally, the court pays particular attention to the public consequences of employing this extraordinary form of relief via injunction. Real Truth, 575 F.3d at 347 (citing Winter, 555 U.S. at 24).

22. "The traditional purpose of a preliminary injunction is to protect the status quo and to prevent irreparable harm during the pendency of the lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits." De La Fuenta, 2016 WL 741317, at *2.

B. Plaintiff's Request for Relief

23. Plaintiff seeks a preliminary injunction that (1) requires "Defendants to immediately process Plaintiff's request to move" and (2) permits Plaintiff "to utilize her HCV program rental assistance at an appropriate home of her choosing." (ECF No. 9 at 1.)

C.  The Court's Review

24. In support of her Motion for Preliminary Injunction (ECF No. 9), Plaintiff relies on her Memorandum of Law in Support (ECF No. 9-1), her Verified Complaint (ECF No. 1) and its attachments (ECF Nos. 1-1–1-5).[3]

25. In opposition to the Motion for Preliminary Injunction, Defendants rely on Young's Affidavit and its Exhibits. (ECF No. 45-1.)

26. The court heard oral argument from the parties' counsel on November 28, 2016. (ECF No. 43.)

27. The court addresses below the vitality of Plaintiff's assertions under each of the four requirements set forth in Winter and reiterated by the Fourth Circuit in Real Truth.

### III.  SPECIFIC FINDINGS AND CONCLUSIONS

A.  Clear Showing of Likely Success on the Merits

28. "[P]laintiffs seeking preliminary injunctions must demonstrate that they are likely to succeed on the merits." Pashby v. Delia, 709 F.3d 307, 321 (4th Cir. 2013) (citing Winter, 555 U.S. at 20). "Although this inquiry requires plaintiffs seeking injunctions to make a 'clear showing' that they are likely to succeed at trial, Real Truth, 575 F.3d at 345, plaintiffs need not show a certainty of success, see 11A Charles Alan Wright et al., Federal Practice & Procedure § 2948.3 (2d ed. 1995). Pashby, 709 F.3d at 321.

  i.  *Plaintiff Can Establish a Clear Showing of Likely Success as to the Merits of Her Civil Rights/Due Process Claim.*

29. "Section 1983, by its own terms, prohibits constitutional violations under color of state law." Jones v. Mullins Police Dep't, 355 F. App'x 742, 745 (4th Cir. 2009).

30. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1)

---

[3] The court observes that Plaintiff did not submit an affidavit in support of her Motion. However, Plaintiff's allegations in support of an injunction were not called into question by Defendants.

"the violation of a right secured by the Constitution and laws of the United States" and (2) this violation "was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

31.     "Section 1983 does not limit its reach to individual state actors who violate plaintiffs' constitutional rights; it also allows claims against municipalities." Jones, 355 F. App'x at 747. "Moreover, courts have found actions of state and municipal agencies administering federally funded programs to be actions undertaken under color of state law." Jorgensen v. City of Clarksburg, W. Va., No. 95-2087, 1996 WL 366324, at *1 n.3 (4th Cir. July 2, 1996) (citations omitted).

32.     "By its terms . . . [§ 1983] creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985) (citing Baker v. McCollan, 443 U.S. 137, 140, 144, n.3 (1979)).

33.     In this case, Plaintiff has alleged deprivation of her rights established by the Due Process Clause of the Fourteenth Amendment, which provides that no State shall "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

34.     "The Fourteenth Amendment does not protect against all deprivations of liberty." Baker v. McCollan, 443 U.S. 137, 145 (1979). "It protects only against deprivations of liberty accomplished 'without due process of law.'" Id. Therefore, the court's inquiry focuses on whether Plaintiff "has suffered a deprivation of property without due process of law." Parratt v. Taylor, 451 U.S. 527, 537 (1981).

35.     A plaintiff must establish three elements to succeed on a procedural due process claim: (1) "he had a constitutionally cognizable life, liberty, or property interest"; (2) "the

7

deprivation of that interest was caused by 'some form of state action'"; and (3) "'the procedures employed were constitutionally inadequate.'"[4]  Sansotta v. Town of Nags Head, 724 F.3d 533, 540 (4th Cir. 2013) (internal and external citations omitted).

36.     As to the first element, Defendants do not appear to dispute Plaintiff's assertion that her "participation in the HCV program is a property interest which is protected by the Due Process Clause." (ECF No. 1 at 9 ¶ 47.)

37.     As to the second element, CAHA is a state actor for purposes of § 1983 because it is a PHA for the City of Aiken and is considered a municipal corporation.  See, e.g., Solomon v. Phila. Hous. Auth., 143 F. App'x 447, 456 n.14 (3d Cir. 2005) (holding that Philadelphia Housing Authority is a "person" for purposes of Section 1983); Jones v. Burnside, Case No. 12-CV-1071, Case No. 12-CV-1091, 2015 WL 4646620, at *11 (W.D. Ark. Aug. 5, 2015) ("The WHA is the public housing authority for the City of Warren, Arkansas, and as a public housing authority, the WHA is considered a municipal corporation for the purposes of section 1983.").

38.     Finally, the court finds the third element is satisfied by Plaintiff's uncontested assertion that Defendants terminated "her rent subsidy under the HCV program based on her landlord's unsubstantiated allegations and without affording her an opportunity to refute those allegations." (ECF No. 1 at 9–10 ¶ 48.)

39.     "The fundamental requis[i]te of due process of law is the opportunity to be heard." Grannis v. Ordean, 234 U.S. 385, 394 (1914) (citations omitted).  "To satisfy traditional due process requirements, a proceeding for termination of public assistance must meet the

---

[4] "Procedural due process simply ensures a fair process before the government may deprive a person of life, liberty, or property, Wolf v. Fauquier Cnty. Bd. of Supervisors, 555 F.3d 311, 323 (4th Cir. 2009), but "does not require certain results," Tri–Cnty. Paving, Inc. v. Ashe Cnty., 281 F.3d 430, 436 (4th Cir. 2002)."  Sansotta v. Town of Nags Head, 724 F.3d 533, 540 (4th Cir. 2013).

following criteria: (1) timely notice stating the reason for the termination, (2) an opportunity to appear at a hearing and to present evidence and question witnesses, (3) the right to representation by counsel at the hearing, (4) the right to have the decision rest solely on the rules of law and evidence adduced at the hearing, and (5) the right to an impartial decision maker." Sinisgallo v. Town of Islip Hous. Auth., 865 F. Supp. 2d 307, 330–31 (E.D.N.Y. 2012) (citing Goldberg v. Kelly, 397 U.S. 254, 266–71 (1970)).

40.     Additionally, Plaintiff's allegations support the conclusion that CAHA is responsible for the deprivation of her rights pursuant to the enforcement of a municipal policy or custom. Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. 658, 694 (1978) ("We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.")

41.     Upon consideration of the foregoing, the court finds that Plaintiff has established a substantial likelihood of success on the merits of her civil rights/due process claim.

B.     Likelihood of Suffering Irreparable Harm Absent an Injunction

42.     Winter also requires that the party requesting injunctive relief demonstrate that it is likely it will suffer irreparable harm absent the preliminary injunction. 555 U.S. at 22–23. The harm to be prevented must be of an immediate nature and not simply a remote possibility. Am. Whitewater v. Tidwell, No. 8:09-cv-02665-JMC, 2010 WL 5019879, at *11 (D.S.C. Dec. 2, 2010) (citing In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 525 (4th Cir. 2003)).

43.     "When analyzing the irreparable harm element, there are two inquiries: 1) whether the plaintiff is indeed suffering actual and imminent harm; and 2) whether that harm is

truly irreparable, or whether it can be remedied at a later time with money damages." Sauer-Danfoss Co. v. Nianzhu Luo, C/A No. 8:12-3435-HMH, 2012 WL 6042831, at *1 (D.S.C. Dec. 5, 2012) (quoting First Quality Tissue SE, LLC v. Metso Paper USA, Inc., C/A No. 8:11-2457-TMC, 2011 WL 6122639, at *2 (D.S.C. Dec. 9, 2011)).

44.    Upon its review, the court finds that Plaintiff has clearly shown she will suffer irreparable harm in the event her Motion is denied.

   *i. Is the Alleged Harm Suffered by Plaintiff Actual?*

45.    Plaintiff first contends she is suffering irreparable harm because Defendants' actions have resulted in rendering Plaintiff "effectively homeless and [she] will remain so unless Defendants process her request to move and allow her to user her HCV program assistance in Fort Mill."[5]  (ECF No. 9-1 at 2.)

46.    Plaintiff also contends that she is suffering irreparable harm based on "the denial of a constitutional right." (ECF No. 9-1 at 6 (quoting Ross v. Meese, 818 F.2d 1132 (4th Cir. 1987).)

47.    "The imminent threat that Plaintiffs will become homeless without Section 8 assistance constitutes irreparable harm." Jones v. Upland Hous. Auth., No. EDCV 12-02074-VAP (OPx), 2013 WL 708540, at *15 (C.D. Cal. Feb. 21, 2013) (citing Solomon v. Hous. Auth. of City of Pittsburgh, No. 2:06cv1155, 2006 WL 6666739, at *3 (W.D. Pa. Sept. 18, 2006) (finding irreparable harm where plaintiff argued that "she [would] likely become homeless without [Section 8] assistance"); Sinisgallo, 865 F. Supp. 2d at 328 (finding the threat of eviction and prospect of homelessness to constitute irreparable harm)).

48.    In addition, "the denial of a constitutional right, if denial is established,

---

[5] The court observes that Plaintiff and her four children had "to move in with her sister, who has four children of her own, and her niece." (ECF Nos. 1 at 9 ¶ 42 & 9-1 at 2.)

10

constitutes irreparable harm for purposes of equitable jurisdiction." Ross v. Meese, 818 F.2d 1132, 1135 (4th Cir. 1987).

49.	In consideration of the foregoing, the court is able to infer the actuality of the irreparable harm suffered by Plaintiff.

*ii. Is the Alleged Harm Suffered by Poly-Med Imminent?*

50.	Because "an application for preliminary injunction is based upon an urgent need for the protection of [a] Plaintiff's rights, a long delay in seeking relief indicates that speedy action is not required." Quince Orchard Valley Citizens Ass'n v. Hodel, 872 F.2d 75, 80 (4th Cir. 1989). This court is hesitant to issue preliminary injunctions when "whatever harm Plaintiffs face . . . is very much the result of their own procrastination." Id. at 79.

51.	Plaintiff filed her Motion for Preliminary Injunction on August 16, 2016, which is five days after the deadline of August 11, 2016, that her attorney provided Defendants to schedule a grievance hearing. (See ECF No. 45-1 at 17–18.)

52.	As a result, the court is also able to infer the imminency of the irreparable harm suffered by Plaintiff.

*iii. Are Monetary Damages Sufficient?*

53.	To demonstrate a need for injunctive relief, a plaintiff must show how the harm suffered is such that other forms of damages available in the normal course of litigation are not enough. "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough," because of the "the possibility that adequate compensatory or other corrective relief will be available at a later date." Hughes Network Sys. v. Interdigital Commc'ns Corp., 17 F.3d 691, 694 (4th Cir. 1994). This "weighs heavily against a claim of irreparable harm." Id.

54.     "A preliminary injunction is not normally available where the harm at issue can be remedied by money damages." Bethesda Softworks, LLC v. Interplay Entm't Corp., 452 F. App'x 351, 353 (4th Cir. 2011).[6]

55.     In the context of this matter, the court is persuaded that the threat of homelessness based on a violation of due process rights cannot in every situation be remedied by money damages. In this regard, the court finds that money damages in the instant case would not be adequate based on the current evidence of record.

C.     The Balance of Equities and the Public Interest Factors

56.     Generally, in determining whether to grant a motion for injunctive relief, "[t]he court must also consider the balance of hardships between the litigants and the impact on the public at large prior to issuing an injunction." Uhlig, LLC v. Shirley, C/A No. 6:08-cv-01208-JMC, 2012 WL 2458062, at *4 (D.S.C. June 27, 2012).

57.     Above, the court found that Plaintiff will suffer irreparable harm without an injunction. Alternatively, there is no evidence that Defendants will suffer any harm if the HCV is preliminarily provided to Plaintiff. Moreover, the financial impact on Defendants would appear to be minimal since they would be using the funds already allocated for HCV payments. As a result, the court finds that the balance of hardships also favors Plaintiff.

58.     Finally, "there is a great public interest in guaranteeing that those in financial

---

[6] The presumption against issuing preliminary injunctions where a harm suffered can be remedied by money damages at judgment stems from real concerns the issuance of a preliminary injunction remedy raises. These concerns include, for example, the fact that in issuing a preliminary injunction order, a district court is required, based on an incomplete record, to order a party to act in a certain way. Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp., 17 F.3d 691, 694 (4th Cir. 1994). Issuing an injunction further risks repetitive litigation, that which carries significant costs for both parties. Id. Thus, there are only "extraordinary circumstances" that are "quite narrow" in application, where preliminary injunction is appropriate notwithstanding monetary damages. Id. (discussing a Plaintiff's business not being able to survive as an example of such circumstances.)

need are not unreasonably terminated from public assistance benefits." Basham v. Freda, 805 F. Supp. 930, 932 (M.D. Fla. 1992). In this regard, "low-income . . . families [should be permitted] to remain in subsidized housing, at least until their constitutional due process rights are fully exercised." Roundtree v. U.S. Dep't of Hous. & Urban Dev., No. 5:09-cv-234-Oc-10GRJ, 2009 WL 7414663, at *7 (M.D. Fla. Aug. 28, 2009) (citing Cole v. Lynn, 389 F. Supp. 99, 105 (D.C. 1975)).

59.     Accordingly, the court finds that granting Plaintiff injunctive relief is in the public's interest.

D.      Required Posting of Bond

60.     Rule 65 provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

61.     At the November 28, 2016 hearing, Plaintiff asked that the court waive the bond requirement because Defendants did not need to be protected from any apparent harm. Counsel for Defendants did not oppose Plaintiff's request.

62.     Accordingly, the court will not require Plaintiff to post any bond to take advantage of the relief granted in this Order.

## IV.     CONCLUSION

63.     Having found that Plaintiff has satisfied all of the requirements for preliminary injunctive relief, the court **GRANTS** Plaintiff Kenisha Jackson's Motion for Preliminary Injunction (ECF No. 9.) The court **ORDERS** Defendants to provide Plaintiff with her HCV expeditiously. Defendants may apply for the dissolution of this preliminary injunction after

Plaintiff has been given advance notice and a meaningful opportunity to be heard on the substantive decision of the termination of the HCV.[7]

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

December 14, 2016
Columbia, South Carolina

---

[7] The court observes that at the November 28, 2016 hearing, the parties disagreed on whether administrative exhaustion was an issue in this matter.